IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAWAD RABI, an Illinois resident; and ZRM ENTERPRISES, a Wisconsin limited liability Company, <br><br> Plaintiffs, <br><br> v. <br><br> GUS DAHLEH aka GG DAHLEH aka GHASSAN DAHLEH, California resident; CDM INVESTORS LLC, an Illinois limited Liability company; KYDRA MAYO, a California resident; NPI DEBT FUND II, LP, a California limited partnership, <br><br> Defendants. | Case No. 1:22-cv-3551 |

**DEFENDANT NPI DEBT FUND II, LP'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Defendant, NPI DEBT FUND II, LP ("NPI"), respectfully submits this Memorandum of Law in Support of Its Motion to Dismiss Plaintiffs' Amended Complaint (Dkt. 19).

**I.      Introduction**

NPI loaned more than $5,000,000 of its own money to Plaintiff ZRM Enterprises ("ZRM") and recorded the loan against a property owned by ZRM. Accordingly, NPI engaged in one legitimate commercial transaction. That single transaction does not and cannot constitute a violation of the RICO statute. Nor does NPI's single loan support allegations of a conspiracy. Indeed, Plaintiffs' Amended Complaint contains an almost two-page introduction telling the tale of an alleged fraudulent scheme, and the only allegation against NPI is that it loaned money for a mortgage. Additionally, NPI's lawful and public recording of the mortgage does not support a claim for quiet title or slander of title. This Court should see the constellation of pleading deficiencies and dismiss all counts against NPI with prejudice.

1

## II.     <u>Legal Standard – Rule 12(b)(6)</u>

As this Court knows, "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (1955)). Additionally, only factual allegations, not conclusions, are entitled to a presumption of truth. *Id.* This motion, pursuant to Rule 12(b)(6), challenges the sufficiency of the allegation in Plaintiffs' Amended Complaint and argues that the few factual allegations against NPI fail to state a claim against it. *See e.g. Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009).

## III.     <u>Argument</u>

The Amended Complaint (Dkt. 19) attempts to assert two RICO claims against NPI: (1) violation of RICO under 18 U.S.C. § 1962(c) (Count I) and (2) conspiracy to violate RICO under 18 U.S.C. § 1962(d) (Count II). However, against all legal precedent, Plaintiffs are trying to turn what appears to be an ordinary business dispute between Plaintiffs and CDM Investors LLC, Gus Dahleh, and Kyndra Mayo (the "CDM Defendants"), into a civil RICO claim. *See*, *Jennings v. Auto Meter Prods., Inc.*, 495 F.3d 466, 472 (7th Cir. 2007) (RICO was "never intended to allow plaintiffs to turn garden-variety state law fraud claims into federal RICO actions"). *see also*, *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1025 (7th Cir. 1992) Further, and fatal to their complaint, Plaintiffs make many core allegations on "information and belief." Allegations made "on information and belief," however, are insufficient to satisfy the pleading requirements of Rule 9(b). *Leaf, Inc. v. Burdeen*, 1996 WL 89070, at 7 (N.D. Ill. Feb. 28, 1996).

### A.   Plaintiffs' Amended Complaint fails to state a RICO claim.

Allegations of fraud in a civil RICO complaint are subject to Rule 9(b)'s heightened pleading standard. *Guaranteed Rate, Inc. v. Barr*, 912 F.Supp. 2d 671, 684 (N.D. Ill. 2012). To

2

plead with particularity means to allege the "who, what, when, where, and how" of the alleged fraud. *Id*. citing *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Financing Svc's, Inc.*, 536 F.3d 663, 668 (7th Cir. 2008). In alleging a RICO pattern, liability is limited to persons who have "personally committed" at least two predicate acts of racketeering. *Id*. Plaintiff must, at a minimum, describe two predicate acts of fraud by each RICO Defendant with some specificity and state (1) the time, place, and content of the alleged communications perpetrating the fraud, (2) the method by which the misrepresentations were communicated, and (3) the identities of the parties to those misrepresentations. *Id*., 684-85; *see also Ray v. Karris*, 780 F.2d 636, 644-45 (7th Cir. 1985). Moreover, the predicate acts of racketeering must be ongoing over an identified period so that they can fairly be viewed as constitute separate transactions. *Id*. at 685. Finally, where, as here, a plaintiff brings RICO claims against multiple defendants, the plaintiff must "plead sufficient facts to notify each defendant of his alleged participation in the scheme." *Id*. (citing *Vicom, Inc. v. Harbridge Merchant Svc's, Inc.*, 20 F.3d 771 (7th Cir. 1994)).

In violation of Rule 9(b)'s pleading requirements, Plaintiffs attempt to lump NPI with the other defendants and the few allegations directed NPI are not pleaded with particularity. Plaintiffs allege only the conclusions that NPI conspired and worked in concert with Defendants Mayo, CDM, and Dahleh for the enterprise of encumbering ZRM's property. (Dkt.19, ¶¶ 68, 74). The only factual detail provided is that ZRM executed a "Deed of Trust, Security Agreement, Assignment of Leases and Rents and Fixture Financing Statement" (the "NPI Encumbrance") in exchange for a loan. (Dkt. 19, ¶ 71). Plaintiffs fail to allege the how, when, where, and to what extent each Defendant is alleged to have worked with NPI. The Amended Complaint not only fails to allege the time, place, manner, or contents of any communication between NPI and CDM, Mayo, and Dahleh, it does not allege any specific communication involving NPI at all.

3

Additionally, the allegations made "on information and belief" are insufficient to satisfy the pleading requirements of Rule 9(b). Plaintiffs allege, "[o]n information and belief," NPI paid money to CDM, Mayo, and Dahleh for the encumbrance they placed on the property. (Dkt. 19, ¶ 71). This might be the only possible allegation of misconduct against NPI, however, Plaintiffs fail provide any details regarding what money NPI allegedly received and provides no support whatsoever for its information and belief. Such allegations are conclusory and insufficient. *See Uni Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923-24 (7th Cir. 1992) (allegations made "upon information and belief" are generally insufficient); *see also Leaf, Inc. v. Burdeen*, 1996 WL 89070, at 7 (N.D. Ill. Feb. 28, 1996).

Ultimately, Plaintiffs' allegations concerning a dispute between Rabi and the CDM Defendants over the ownership of Plaintiff ZRM are insufficient to bring NPI into a RICO claim. In fact, Plaintiffs admit NPI's only involvement is providing ZRM with a loan and taking a security interest in the Property. (Dkt.19, ¶¶ 68, 74). Plaintiffs fail to allege the existence of a RICO enterprise and fail to allege that NPI and the CDM Defendants engaged in a pattern of racketeering activity. Plaintiffs' RICO claims, therefore, must be dismissed.

1. **Plaintiffs cannot allege a RICO violation under 18 U.S.C. § 1962(c)**

The elements of a RICO claim under 18 U.S.C. § 1962(c) are: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Bible v. U.S. Aid Funds, Inc.*, 799 F.3d 633, 655 (7th Cir. 2015). Here, Plaintiffs' RICO claim fails because (1) they cannot allege the existence of a RICO enterprise or a pattern of racketeering activity, and (2) the Amended Complaint makes no specific allegations supporting predicate acts by NPI.

4

### a. Plaintiffs' Amended Complaint fails to allege an "Enterprise"

Plaintiffs fail to plead facts that could establish that NPI was part of any enterprise, let alone a RICO enterprise. To plead a RICO claim, plaintiffs must identify an enterprise. *See Guaranteed Rate, Inc. v. Barr*, 912 F. Supp. 2d 671, 686 (N.D. Ill. 2012). In this case, Plaintiffs allege the RICO enterprise is an "association in fact enterprise" that includes CDM, Dahleh, Mayo, and NPI. (Dkt. 19, ¶ 84). The Supreme Court has defined an association-in-fact enterprise as "a group of persons associated together for a common purpose of engaging in a course of conduct." *Boyle v. United States*, 556 U.S. 938, 946 (2009) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981). Accordingly, a plaintiff must demonstrate three structural features to establish an enterprise: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to continue to pursue the enterprise's purpose. *Id.* at 946-48. The existence of a common goal or purpose is an "essential ingredient" of an association-in-fact enterprise. *Guaranteed Rate*, at 687 (citing *United States v. Tukette*, 452 U.S. 576, 583 (1981)).

The Seventh Circuit has found the existence of a RICO enterprise when a plaintiff sufficiently alleges (i) "an unusual degree of economic interdependence among the entities" and (ii) communications suggesting that the entities do not manage their business separately but in fact work together. Id. at 656. Plaintiffs fail to allege either. The Amended Complaint contains no allegations that NPI and the CDM Defendants were economically interdependent. In fact, the only alleged interaction between NPI and the CDM Defendants is a "Deed of Trust, Security Agreement, Assignment of Leases and Rents and Fixture Financing Statement" (the alleged "NPI Encumbrance") executed in exchange for a loan. (Dkt. 19, ¶ 71). There are no allegations

5

that either CDM or NPI did anything but operate their businesses separately. Tellingly, there are no allegations that so-called NPI Encumbrance is anything other than a typical mortgage filing.

Plaintiffs' RICO claim also fails because it fails to plead a relationship between NPI and the other RICO Defendants. As to NPI, Plaintiffs allege that NPI is run by Tracy Thomas Coveyou, who, Plaintiffs allege "on information and belief," is Dahleh and Mayos friend, neighbor, and business associate, and "NPI has lent to a Dahleh related entity before". (Dkt. 19, ¶¶ 7, 8). These allegations are conclusory and do not establish NPI was engaged in a RICO enterprise. Plaintiffs fail to allege any facts that NPI and the CDM Defendants were affiliated with one another outside of the interaction necessary to commit the alleged predicate acts. See e.g., *Starfish Inv. Corp. v. Hansen*, 370 F.Supp.2d 759, 770 (N.D. Ill. 2005). Plaintiffs' Amended Complaint fails to allege facts establishing the requisite relationship among the defendants necessary to allege a RICO enterprise.

Even if the Amended Complaint demonstrated the existence of an enterprise, Plaintiffs acknowledge that NPI cannot be a part of the alleged enterprise. Specifically, Plaintiffs allege that the CDM Defendants and NPI formed an enterprise, which "involved encumbering the Property for NPI to assert some interest in the Property and for [the CDM Defendants] to obtain funds from NPI for the interest in the Property." (Dkt. 19, ¶ 84). Plaintiffs admit, however, that "[i]n furtherance of *their enterprise to obtain money from NPI* and encumber the Property, Dahleh, Mayo, and CDM systematically changed the organizational records of ZRM, made false filings with state and local government agencies, and executed improper encumbrances on the property; all to fraudulently support their obtaining millions of dollars in cash from NPI." (Dkt. 19, ¶ 53) The purpose of the enterprise, Plaintiffs allege, was to obtain money from NPI. It is nonsensical to allege that NPI joined an enterprise for the purpose of obtaining money from

6

itself. Plaintiffs fail to present a single factual claim asserting that NPI had any interest in the outcome of the alleged scheme beyond its own individual interests.

Plaintiffs also fail to plead facts establishing NPI used the alleged enterprise to engage in a pattern of racketeering activity. *See Jay E. Hayden Found*, 610 F.3d at 388-89 (finding that while plaintiffs demonstrated a purpose, relationships, and longevity, they did not demonstrate that defendants were "*using* an enterprise to engage in a pattern of racketeering activity.") (emphasis in original). The Amended Complaint does not allege NPI had an ownership interest in any of the property involved, shared in the profits of the enterprise, or had any interaction with the alleged "enterprise" outside of making a mortgage loan. There are no allegations that NPI directed, controlled, or conducted any aspect of the alleged enterprise. Because Plaintiffs fail to plead facts that could establish a RICO enterprise, or that NPI was a part of one, Counts I and II of Plaintiffs' Amended Complaint must be dismissed.

    **b. Plaintiffs fail to sufficiently allege Defendants engaged in "racketeering activity"**

Plaintiffs do not, and cannot, allege that NPI engaged in "racketeering activity." Racketeering activity is defined as any of the specific acts set forth in the RICO Statute – 18 U.S.C. § 1961(1). *See* 18 U.S.C. § 1961(5). While Plaintiffs attempt to allege a RICO claim for "mortgage lending fraud" under 18 U.S.C. § 1014, "mortgage lending fraud" is not enumerated in the RICO Statute and does not provide Plaintiffs with a private right of action. *See, e.g.,* 18 U.S.C. § 1961; *Hudgens v. Pratha Ent., Inc.*, 2017 WL 977009, at *5-6 (N.D. Ill. Mar. 14, 2017); *Harris Custom Builders, Inc. v. Hoffmeyer*, 1994 WL 329962, at *4 (N.D. Ill. July 7, 1994). Despite this, Plaintiffs desperately attempt to allege NPI perpetrated the fraud with the CDM Defendants. (Dkt. 19, ¶¶ 78, 89, 90, 103). However, Plaintiffs' reliance on Section 1014 is illogical since the only victim of the alleged "mortgage lending fraud" is NPI, the lender on the

mortgage. Consequently, Plaintiffs fail to allege that NPI's conduct falls under the RICO statute's definition of racketeering and their claims must be dismissed.

Plaintiffs also fail to to satisfy the pleading requirements of Rule 9(b) as to their allegations that NPI and the CDM Defendants engaged in mail fraud and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343. (Dkt. 19, ¶ 85). Section 1341 prohibits fraud through the mail. 18 U.S.C. § 1341. Section 1343 prohibits communications in a fraudulent scheme "by means of wire, radio, or television communication in interstate or foreign commerce." 18 U.S.C. § 1343. To satisfy the requirements of Rule 9(b), Plaintiffs must (1) describe the predicate acts of fraud with some specificity; (2) state the time, place and content of the alleged fraudulent communications; and (3) notify each Defendant of their role in the alleged scheme. *EQ Fin., Inc. v. Pers. Fin. Co.*, 421 F. Supp. 2d 1138, 1143 (N.D. Ill. 2006). Loose references to mailings and telephone calls are insufficient. *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994). Furthermore, Plaintiffs' reliance on the allegedly forged documents does not constitute racketeering activity. (Dkt. 19, ¶ 86) *See Drobny*, 929 F. Supp. 2d at 848 (rejecting falsely filed foreclosure complaints as racketeering activity because "[e]ven assuming that Defendants knew that the foreclosure complaints were false, they would have intended to deceive the . . . court, not Plaintiffs," and holding that "one cannot commit mail or wire fraud by fooling one person to receive something of value from another") (quotation omitted).

Here, Plaintiffs' conclusory allegations about racketeering activity fail to include any details or information about each Defendants' alleged mortgage lending fraud, wire fraud, or mail fraud. (Dkt. 19, ¶¶ 80, 83-87). Plaintiffs fail to provide any allegations that provide the time, place, content and method of the alleged communications that perpetrated the fraud. *See Slaney*, 244 F.3d at 599; *Goren*, 156 F.3d at 726; *Jepson,* 34 F.3d at 1328; *Drobny*, 929 F. Supp. 2d at

848; *EQ Fin.,* 421 F. Supp. 2d at 1143. In fact, the Amended Complaint fails to include any allegations as to what communications NPI had with the CDM Defendants, when the communications occurred, the content of the communications, or who were parties to the communications. Importantly, Plaintiffs fail to allege that NPI made a false statement. Fatally, Plaintiffs do not allege two predicate acts of racketeering activity with the requisite particularity required by Rule 9(b), and their RICO claims must be dismissed.

c. **Plaintiffs fail to sufficiently allege a "pattern"**

A pattern of racketeering activity requires at least two predicate acts of racketeering within a ten-year period. *Guaranteed Rate*, at 689; 18 U.S.C. § 1961(5). A "pattern" also requires a showing of the "continuity plus relationship" test: that the racketeering predicates are related to one another and pose a threat of continued criminal activity. *Id*. *See also Gamboa*, 457 F3d at 706 ("[I]solated instances of criminal behavior, not presenting at least some threat of future harm, cannot meet § 1962(c)'s continuity element.") To demonstrate sufficient relationship and continuity among the predicate acts, plaintiff must establish either (1) a series of related predicate acts extended over a substantial period ("close-ended continuity"), or (2) that the past predicate acts by their very nature project into the future with a threat of repetition ("open-ended continuity"). *Id*.

In determining whether an alleged pattern qualified under the closed-ended continuity test, courts consider: (1) the number and variety of predicate acts; (2) the length of time over which they were committed; (3) the number of victims; (4) the presence of separate schemes; and (5) the occurrence of distinct injuries. *Morgan v. Bank of Waukegan*, 804 F.2d 970, 975 (7th Cir. 1986). While no single factor is dispositive, the second factor – duration – is the most important and the "closest thing [the Court has] to a bright line continuity test." *Guaranteed*

9

*Rate*, 688-89. However, to satisfy the duration requirement, the predicate acts must extend over a substantial period of time; a few weeks or months is considered insubstantial. *Northwestern v. Bell*, 492 U.S. at 242.

Here, as to NPI, Plaintiffs fail to plead either closed-ended or open-ended continuity exists. Plaintiffs do not allege that NPI devised any alleged scheme. Plaintiffs make no allegations that NPI was even aware of a scheme. Rather, Plaintiffs allege that "in furtherance of *their enterprise to obtain money from NPI* and encumber the Property, Dahleh, Mayo, and CDM systematically changed the organization records of ZRM, made false filings with state and local government agencies, and executed improper encumbrances on the property; all to fraudulently support their obtaining millions of dollars in cash from NPI." (Dkt. 19, ¶ 53) (emphasis added). Thus, Plaintiffs' allegations establish that NPI did not engage in any alleged scheme.

Moreover, Plaintiffs allege only a single fraudulent scheme. Plaintiffs claim that NPI improperly placed a mortgage on the Property because the CDM Defendants allegedly forged documents which allowed them to acquire a loan from NPI. (Dkt. 19, ¶¶ 84–93.) A single fraudulent scheme with only one injury to one victim does not constitute a pattern. *Slaney*, 244 F.3d at 599. Also, the single scheme alleged by Plaintiffs does not satisfy the requirements for either continuity theory because it only occurred over a few months. *See, e.g., Midwest Grinding*, 976 F.2d at 1024 (collecting cases and finding no pattern for a single scheme lasting nine months). Plaintiffs allege the scheme occurred between December 2021 and March 2022. (Dkt. 19, ¶¶ 56-62). This is not a sufficient period of time to establish the continuity necessary to allege a pattern of racketeering activity. Finally, open-ended continuity cannot exist because the supposed predicate acts (i.e., the forgeries) and the alleged harm (i.e., the mortgage) already occurred and do not present a "threat of repetition." *Id*.

The only alleged involvement of NPI is its role as a lender to ZRM. There are no allegations that NPI played any role in the operation of ZRM's business or had an ongoing relationship with the CDM Defendants. These allegations do not carry any of the trappings of a long-term criminal operation that carries with it a threat to society." *Id.* at 776 (quoting *Midwest Grinding*, 976 F.2d at 1025). For these reasons, Plaintiffs cannot allege a pattern of racketeering activity with the requisite specificity and their RICO claims must be dismissed.

2. **Plaintiffs are unable to allege a RICO conspiracy claim under 18 U.S.C. § 1962(d)**

Conspiracy under § 1962(d) requires a plaintiff to allege: (1) the defendant agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity, and (2) the defendant further agreed that someone would commit at least two predicate acts to accomplish those goals. *Slaney*, 244 F.3d at 600. An agreement to participate in an endeavor which, if completed, would constitute a violation of the substantive statute is the "touchstone of liability" under § 1962(d). *Id*. The target of § 1962(d) is the agreement to violate RICO's substantive provisions, not the actual violations themselves." *Id.*

Here, Plaintiffs' RICO conspiracy claim is based on the same "facts" alleged in their defective Section 1962(c) claim. Because Plaintiffs' allegations fail to establish a violation of Section 1962(c), they cannot state a claim for conspiracy under Section 1962(d). *See United Food and Comm. Workers Unions*, 719 F.3d at 856–57. Additionally, Plaintiffs' Amended Complaint fails to satisfy Rule 9(b)'s requirements for pleading the elements of a RICO conspiracy claim with particularity. *Abdulla v. Mijailovic,* No. 07-cv-2113, 2007 WL 9815866, at *5 (N.D. Ill. Nov. 20, 2007) Instead, Plaintiffs' vague, conclusory allegations fail to assert any details as to "the who, what, when, where and how" of Defendants' alleged agreement to engage in mail and wire fraud. *Pirelli*, 631 F.3d at 441. Moreover, Plaintiffs' desperate attempts to

11

attribute allegations to NPI and the CDM Defendants as a single group (Dkt. 19, ¶¶ 97-99) are insufficient to meet the heightened pleading standard of Rule 9(b). *Guaranteed Rate*, at 685. Plaintiffs' RICO conspiracy claim, therefore, fails as a matter of law.

### B. Plaintiffs fail to state a cause of action for civil conspiracy

Under Illinois law, "a civil conspiracy involves two or more persons combining to accomplish either a lawful purpose by unlawful means or an unlawful purpose by lawful means." *Vance v. Chandler*, 231 Ill. App. 3d 747, 750 (3rd Dist. 1992) (citing *Smith v. Eli Lilly & Co.*, 137 Ill. 2d 222, 235 (1990)). To properly plead a cause of action for civil conspiracy, Plaintiffs must allege facts that, if true, satisfy the following elements: (1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties; and (4) the overt act was done pursuant to and in furtherance of the common scheme. *Vance*, 231 Ill. App. at 750. Like Plaintiffs' RICO claims, their civil conspiracy claim is subject to Rule 9(b)'s heightened pleading standard because it "sounds in fraud." *See Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007).

Plaintiffs' civil conspiracy claim specifically incorporates the allegations in Paragraphs 1 through 100 of the Amended Complaint – the same allegations that encompass Plaintiffs' RICO claims and mortgage lending fraud, wire fraud and mail fraud. (Dkt. 19, ¶ 101). Plaintiffs do not add any further specificity or particularity. Thus, like their RICO claims, their civil conspiracy claim fails for failure to satisfy Rule 9(b). *Korber*, 2012 WL 13057859, at *8. Plaintiffs provide no new facts and lump all Defendants together without attributing any particular act to any one of the Defendants. A complaint based solely on a theory of collective responsibility must be

dismissed. *See Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) Plaintiffs' civil conspiracy claims, therefore, must be dismissed.

### 1. Plaintiffs do not allege an agreement to participate in an unlawful act.

The Illinois Supreme Court wrote in *Adcock v. Brakegate*, 164 Ill. 2d 54, 62 (1994), "the agreement is a necessary and important element of a cause of action for civil conspiracy." Because Plaintiffs have not – and cannot – allege that NPI entered into an agreement to participate in an unlawful act, the civil conspiracy claim against NPI falls at the very first hurdle. Plaintiffs offer only vague and conclusory allegations that NPI and the other Defendants, acted in concert and conspired with each other to engage in unlawful acts to encumber the property and obtain funds for the encumbrance. (Dkt. 19, ¶ 102). However, Plaintiffs admit that to "obtain money from NPI and encumber the Property, Dahleh, Mayo, and CDM systematically changed the organizational records of ZRM, made false filings with state and local government agencies, and executed improper encumbrances on the property; all to fraudulently support their obtaining millions of dollars in cash from NPI." (Dkt. 19, ¶ 53). Nowhere does the Amended Complaint allege that NPI entered into any agreement with the CDM Defendants to commit these acts. Even more, Plaintiffs fail to allege that NPI had any knowledge of the acts.

Further, to properly plead a claim for civil conspiracy against NPI, Plaintiffs must allege facts establishing NPI's knowing and voluntary participation in a common scheme. *Adcock*, 164 Ill. 2d at 64. "There is no such thing as accidental, ***inadvertent, or negligent*** participation in a conspiracy." *Id*. (emphasis added). Plaintiffs, however, merely allege that NPI's "acceptance of Mayo's signature on the NPI Encumbrance and failure to obtain signatures of both the Forged Operating Agreement's designated managers proves NPI was working in concert with CDM, Dahleh and Mayo for the enterprise as no responsible lender would disregard such formalities as

13

requiring the signatures of the purported managers of the title holder of the property." (Dkt. 19, ¶¶ 75, 76). NPI's alleged failure can hardly be reasonably characterized as knowing participation in a conspiracy to commit an unlawful act and Plaintiffs' civil conspiracy count should be dismissed as to NPI.

### C. Counts IV and VI of Plaintiffs' Amended Complaint fail to state a cause of action against NPI and should be dismissed

#### 1. Plaintiffs' common law quiet title claims must be dismissed

"A 'prima facie case to quiet title requires that the party bringing the action must (1) possess good or true title to the property and (2) that title, whether legal or equitable, must be superior to other claimants.'" *Bauer v. Roundpoint Mortg. Serv. Corp.*, No 18 C 3634, 2018 WL 5388206, at *4 (N.D. Ill. Oct. 29, 2018). However, "[a] quiet title action does not lie *where the defendant has not made an adverse claim* to an interest in the plaintiff's property." *Manga v. Quicken Loans, Inc.*, No. 13 C 3606, 2014 WL 1647183, at *3 (N.D. Ill. Apr. 24, 2014).

Plaintiffs allege that ZRM has owned – and still owns – title to the Property that secures NPI's mortgage. (*See*, e.g., Dkt. 19, ¶¶ 15, 27-28, 109-110, 116, 120-121, 131). Plaintiffs do not allege that NPI has made any adverse claim to ZRM's interest in the Property. Moreover, Plaintiffs fail to recognize that NPI issued a loan to ZRM, not an owner or member of ZRM. NPI's mortgage applies regardless of who owned or had interest in ZRM. Thus, Plaintiffs fail to allege a dispute as to ZRM's ownership in the Property. Because Plaintiffs do not allege that NPI has made an adverse claim to ZRM's interest in the Property, Plaintiffs' claim to quiet title against NPI should be dismissed pursuant to Rule 12(b)(6). *See Monga*, 2014 WL 1647183, at *3.

### 2. Plaintiffs' slander of title claim must be dismissed

A cause of action for slander of title requires proof that (1) the defendant made a false and malicious publication, (2) the publication disparaged the plaintiff's title to property, and (3) the publication caused damages to the plaintiff. *Bozek v. Bank of Am., N.A.*, 2021 IL App (1st) 191978, ¶ 87. A complaint fails to state a cognizable claim for slander of title where plaintiff fails to provide coherent factual allegations that defendants conduct was, in fact, false or malicious. *Id*. Plaintiffs' Amended Complaint does nothing more than regurgitate the operative words for a cause of action. Plaintiffs conclude that NPI and Mayo acted maliciously in creating and directing the recording the NPI Encumbrance. (Dkt. 19, ¶ 142). Plaintiffs do not allege facts establishing that NPI's conduct was, in fact, false or malicious. *Bozek*, 2021 IL App (1st) 191978, ¶ 87. What's more, Plaintiffs fail to assert any allegations that NPI did anything other than act as any other lender would when it recorded a security interest in the Property after issuing a loan to ZRM. In fact, NPI acted no differently than ZRM's prior lender Grand Ridge National Bank (Dkt. 19 ¶31). Consequently, Plaintiffs cannot state a cause of action against NPI for slander of title and Count VI should be dismissed.

## IV. Conclusion

Defendant NPI Debt Fund II, LP respectfully requests that this Honorable Court grant its Motion and dismiss Plaintiffs' Amended Complaint in its entirety with prejudice.

Dated: December 9, 2022                             Respectfully submitted,

                                                                                  /s/ James L. Kopecky
                                                       James L. Kopecky
                                                       jkopecky@ksrlaw.com
                                                       Kopecky Schumacher Rosenburg LLC
                                                       120 North LaSalle Street, Suite 2000
                                                       Chicago IL 60602
                                                       Telephone: (312) 380-6552

## **CERTIFICATE OF SERVICE**

      I hereby certify that on December 9, 2022, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

                                               */s/ James L. Kopecky*
                                                James L. Kopecky